Thank you Case number 25-2118 United States Equal Employment Opportunity Commission v Covius Services, LLC Mr. Winkleman. Good morning, Your Honors, and may it please the Court, Stephen Winkleman with the EEOC, and I'd like to reserve five minutes for rebuttal. The District Court erred in dismissing this action mid-trial for two independent reasons. First, the Court improperly struck from evidence a key email which demonstrated that Covius chose not to hire Ms. Ebert because of her disabilities or legitimate use of prescription pain management medication. Second, and alternatively, the Court overlooked other circumstantial evidence in the record that could have allowed the jury to reach the same conclusion. And I'd like to begin by highlighting what we think is the simplest and cleanest path to reversal, and that goes through the District Court's ruling on the business record exception. On that front, the Court applied the wrong legal standard by requiring the EEOC to show that Richardson, the author of the email, had direct personal knowledge of the event she recorded, namely, Covius' decision not to hire Ms. Ebert. And that's not what the rule says. The plain text of Rule 8036 makes clear that the author of a business record may rely on information supplied by others with knowledge, and here that's exactly what Richardson did. The record shows that she received Covius' interview feedback from one of two Aerotech account managers, who in turn received that information from Andrea Diaz, one of the Covius representatives who interviewed Ebert. You know, it looks to me as though maybe the central problem of this case is that the district judge forgot the testimony. This is to say, I'm not sure the district judge made a mistake of law, assuming the facts were as he thought they were when he made the ruling. But he says she had no idea where this came from. Well, that's not true. It came from one of two people. And they also says that she was told the reason was just to soften the blow, but that's not true either. There's testimony directly to the contrary. So it seems to me as though what happened is the district judge forgot the testimony and then made the ruling based upon an erroneous assumption of what the testimony was. Had the testimony been as he thought, he might have been right. Your Honor, I believe that's correct as to the residual, its ruling on the residual exception. The court in its ruling on the motions in limine had found that the email had sufficient guarantees of trustworthiness for purposes of the residual exception, but then at trial appeared to reverse that ruling based on the two factual findings that Your Honor mentioned. First that Ebert had or that Richardson had no idea where she received that information. And secondly, that she may have made it up to soften the blow. And neither of those is accurate as to the first. Again, Richardson repeatedly testified that she received the information from one of two Aerotech account managers, Ostrander or Garrity, and that they in turn received that information from Diaz. And as to the second, Richardson made clear that she did not make up the information when I asked about it on redirect, said that it was the statement that she heard. Yeah, it was very clear and clear testimony on that point. Yes, Your Honor. And on the court's ruling on the business record exception, because it applied the wrong legal standard, it necessarily abused its discretion. And here that's case dispositive. The court's dismissal of the action hinged entirely on its exclusion of the email itself, which means that if this court were to reverse the district court's ruling on the business record exception, it would necessitate vacature. And this court need not address any other issue. Counsel, I would like to focus on the language of the business records exception. There's a phrase in there that talks about the information being transferred or submitted by someone with knowledge.  Transmitted. Thank you. By someone with knowledge. So that someone with knowledge, is that someone, Andrea Diaz, or is that someone one of the two account managers? So we think here within within Aerotech's business itself, that information came from either Garrity or Ostrander. The evidence seemed to show that it was Ostrander who in turn received the information from Andrea Diaz. Whether it's both, both layers are considered one with knowledge or it's ultimately from Andrea Diaz, the result would be the same, which is that Richardson ultimately obtained the information from someone with knowledge, either directly from Garrity or Ostrander or indirectly from Diaz. So your position is either one of the account managers would be the individual with the knowledge that was then, had the information that then was transmitted to Richardson, or it could have been Andrea Diaz. We for sure know that she had knowledge. Yes, at least for the reason for Covias's decision not to hire Ebert. Right, okay. What's the standard under which we review what the district court did with respect to this? Is it abusive discretion? Is it de novo? What's the standard? So there are two sets of standards here with respect to the court's ruling on the motion for judgment as a matter of law or its dismissal. This court reviews that decision de novo. As to its evidentiary rulings, it reviews for abusive discretion. However, it reviews de novo, the court's interpretation of the federal rules of evidence. And that makes sense because there are two ways in which the court can abuse its discretion, either by applying an incorrect legal standard, which is a question of law review de novo, or by relying on clearly erroneous factual findings. And here the district court did both. Now, turning to the rule of seven residual exception, the email was alternatively admissible because there were sufficient guarantees of trustworthiness. Was that even examined in the record below? I'm sorry, was what examined? Trustworthiness. Was for purposes of the residual exception. In the district court's ruling on the admissibility under rule 807 on the motions in limine, it found that the email was supported by sufficient guarantees of trustworthiness. As the court initially... This is before he changed course. Yes, your honor. This was before in its pre-trial ruling on the motions in limine. Okay. And what the court there reasoned was that the guarantees of trustworthiness included the fact that Richardson did not write the email in anticipation of litigation. The contents were not self-serving. She wrote the email soon after receiving Covius's feedback. She wrote it pursuant to established business practices, which meant at a minimum that the email almost satisfied the business record exception and other evidence in the record corroborated Richardson's account. And key among that evidence is the fact that Smelko's handwritten notes on Ebert's resume remarked on her migraines and pain management medication. And he later testified that he believed she would have disclosed that information in response to his questions about Covius's drug testing policy. That aligns very closely with Richardson's email, which says that Covius chose not to hire Ebert because she had mentioned that she was on pain management medication for her migraines and that the company does drug testing for hire. And moving past the evidentiary rulings, there's other circumstantial evidence in the record that could have allowed the jury to find that Covius had discriminated on the basis of disability. And very quickly, that evidence falls roughly into four buckets. First, there's Covius's conflicting explanations. Second, there's Smelko's notes, handwritten notes, which I've already mentioned. Third, the fact that the comparative evidence that we provided, as well as the suspicious timing. And starting with the Covius's shifting explanations, here they almost essentially contradicted what their initial explanation for refusing to hire Ms. Ebert. Covius initially claimed that Andrea Diaz had made the hiring decision or the decision not to hire Ebert. And at trial, Diaz testified that that wasn't true. And in fact, that the prior statement she had provided to the EEOC was not accurate. Covius initially claimed that Ebert had disclosed her conditions and medication unprompted. Smelko testified that that wasn't true. That in fact, he assumed that she had disclosed that information in response to his questions about Covius's drug testing policy. And finally, Covius initially claimed that it chose not to hire Ebert in part because Andrea Diaz had expressed concern that Ebert's migraines, frequent migraines, would prevent her from regularly attending work. And at trial, Diaz testified that that was not true either. That in fact, she could not recall raising any such concerns and did not believe she would have done so. And in fact, her notes on Ebert's resume indicated that she had given Ebert a passing score indicating that she was hireable. Taking all of that evidence together and viewing it in the light most favorable to the EEOC, a jury could readily find that Covius had chosen not to hire Ebert because of her conditions or medication. And unless the court has any further questions, we would ask that this court vacate and remand. Thank you, counsel. Thank you. I'm going to try to find that button again. There's a button down there. There we go. One of the curses of being tall, Your Honor. Thank you. May it please the court. Phil Talmadge here representing Covius Services, LLC. The district court, in fact, did not abuse its wide discretion in concluding that Exhibit 37 lacked trustworthiness and that it was inadmissible as an hearsay exception. Either under the business record provision of Rule 803-6 or under 807. And without that hearsay evidence, there was insufficient evidence for the case to proceed and the trial court did not err in dismissing under Rule 50-A. Bottom line here, what the EEOC is attempting to do is to bootstrap a very weak case on the basis of Exhibit 37, which was inadmissible. When you get right down to it, you start with a proposition that it contains an assertion by Ms. Richardson that there was a problem with respect to the use of prescription medications for employees at Covius when that was fundamentally untrue. The record demonstrates that, in fact, that Ms. Ebert would have passed the higher right drug test for the use of prescription drugs. It was found at ER 102, Provision 10. Very clearly, she would have passed and there was no evidence in the record of historically there having been anyone who failed a drug test at Covius who had used prescription drugs. So you have that fundamental misstatement to begin with. So what's the misstatement? The misstatement that there was a problem with respect to the prescription drugs that you would have had difficulties on the job. Her statement was, but their prescreening process does not allow for pain medication as you would be working with finances. That was just fundamentally untrue. It was a... Wait a minute. It's untrue that the statement was made? It was untrue. The statement itself was untrue. But the statement was, if the statement was made, it was made by an employee of the company? Well, that's a broad assertion here in this particular case, given the attenuated set of circumstances. No, I'm asking a different question. Was the statement, whether true or not, was the statement made? It was a statement made by Ms. Richardson on the basis of what she believed were statements from three individuals, not just a single one. Allegedly, Covius's Ms. Diaz, Andrea Diaz said something to either Ms. Ostrander, Ms. Garrity, or some unidentified third person. At one time, there was a phantom third person in the conversation. But the fact of the matter is Ms. Diaz denies any indication that she made such a statement. And Ms. Ostrander doesn't recall any such statement. Ms. Garrity doesn't testify. And the phantom remains the phantom. There is nothing evidencing anything resembling trustworthiness in that statement. And you have the testimony on cross-examination. It was on cross-examination that Ms. Richardson, who was a junior Aerotech recruiter, basically said, yeah, I might have tried to soften the blow to Kelly Ebert in the statement that I made to her. Well, wait a minute. But then she was specifically questioned. Did you say that to soften the blow? Or did you say it because it was true? And she says, I said it because it was true. Isn't that right? Isn't that her testimony? Well, the problem with that testimony is she's basing that testimony on what, Your Honor? No, I'm asking you, isn't it true that she said, I said it because it was true. I did not say it in order to soften the blow. Well, she said she testified that she said it because she wanted to soften the blow to Ms. Ebert. And that's the perception that the trial judge, Judge Rice, had. No, you and I are at cross purposes. I think she said when the government lawyer questions her, did you say it because it was true? She said, I said it because it was true. Isn't that right? She says at that point that it was true. But yeah, OK. The problem with that testimony is she also said she was doing it to soften the blow. Both things can be true. That is to say, it was a true statement. And I told her in order to soften the blow. And the additional problem with that statement's lack of trustworthiness is this. Ostrander testifies that if there was a discriminatory statement like that, she would have had to report it to HR. Richardson testifies that had a discriminatory statement like that been made, she would have had to report it to HR. Neither did. Neither reported it to Aerotech's HR. There's no indication of any sort that they believe that a discriminatory statement was made. And in fact. Ostrander testifies on a couple of occasions in the record, ER 519 and 526, that she didn't believe discrimination had occurred or any kind of discriminatory statement had been made. Here's my problem with this case. And that is the district judge in making the ruling that's now being objected to made two very obvious mistakes. And had the district judge not made those mistakes, I'm not sure the district judge would have ruled as he did when he had the stuff in front of him earlier on. He'd given the opposite ruling. Well, Your Honor, with all due respect to Judge Rice, let's not forget that Judge Rice had denied summary judgment. The case had gone to trial. He made the rulings that he made, and he believed that the record, the trial record was going to document the necessary trustworthiness factor to sustain his ruling on ER 807. But you can respond to me and say that I'm wrong, but as I read the record, Judge Rice says, well, she had no idea who made the statement. That's not true. She said it was one of two people. One of three people that were involved, Your Honor. At one point or another, there were three people that allegedly made the statement. She couldn't identify any of the three that made the statement. That's different from she had no idea. Well, the problem is the principle here is trustworthiness. And then the second one is where the judge says she made it to soften the blow, ignoring the fact that she also testified. I said it because it was true. So when I've got the district judge who misremembers the record, I've got problems with what the district judge did. But this is a judge, Your Honor. He's a very good judge. I'm not at all questioning the competence of the judge. But he made a couple of mistakes. I've got you on that. And I understand how trial judges can make those kinds of mistakes. But in this particular set of circumstances, you have a trial judge who heard the motions for summary judgment, who heard the entirety of the record. The entirety of the record was familiar with the record from the outside. Well, kind of. But then he forgot. Well, the bottom line here is trustworthiness. This record, this Exhibit 37 comes in on the basis of it being a business record that bears trustworthiness. That's the argument from the EEOC. It comes in under his ruling, under the sparingly used exception to the hearsay principle of Rule 807. Again, based on trustworthiness. The core issue here is trustworthiness of this record. And the... Are you disputing, counsel, that the information came from someone with knowledge, that the information was transmitted? No. By someone with knowledge. And to your point, Judge Tong, I think exactly. The district court in this particular set of circumstances, pre-trial, determined that it wasn't a business record because there was a lack of personal knowledge applying the Deepwater Horizon factors. But that principle requires personal knowledge. Personal knowledge of whom? Well, Richardson had no personal knowledge of that statement. She wasn't in the interview. She didn't have any knowledge of anything. You have Diaz, who disclaims any responsibility or any understanding of any information about this. And you have three potential people. Three. Count them three. The Phantom, Garrity, and Ostrander. And you don't have anybody being able to say that they are the source of this information. How can that record be trustworthy? The district court determined, in part or whole, that refusing the admission of this exhibit, this email, was because it was not trustworthy. Ultimately, I believe, Your Honor, that's the core basis for the judge's decision. I mean, pre-trial... Does he say that? Well, in pre-trial, he doesn't say that because he's talking about the personal knowledge understanding that Judge Tong was referring to. And there was no personal knowledge on the part of any of the players that we're talking about. So he didn't get to the trustworthiness factor. But certainly, by the time we're talking about the ER-807 factor, trust me when there's the core element of that exceptional exception to the hearsay rule. But ordinarily, what a district judge or any trial judge does in that circumstance is make a determination that this document lacks evidence of trustworthiness. And we don't have that here, do we? I'm not saying whether it is or isn't. There's no such determination. Is there a formal finding? No. But I think the basis of his ruling on the record was trustworthiness. I think the core of his belief here was this wasn't trustworthiness. I thought these people were going to connect testimony at trial, the necessary testimony to the statements made in Exhibit 37 to allow it to come in. They didn't do that. The bottom line was the record that was at issue was untrustworthy. It was not of an appropriate basis for admission into the record. And therefore, it shouldn't have come in. And it had come in. Now, with that exclusion of Exhibit 37, contrary to the statements made by the EEOC, they didn't have anything. I mean, counsel stood up before you just moments ago and said, Exhibit 37 was key. That was his description, not mine. But it was, in fact, true. It was key. That was the key to their case. They didn't have that. They didn't have anything linking Covias to any kind of discrimination. Look at what you've got on the record here. Covias had a policy against discrimination. They had no track record of discriminating on the basis of migraines or use of prescription drugs or anything else. Yeah, it's not quite right. They don't have anything. They don't have much. And I think without this, they're in trouble. But Smelko writes on the top of her resume, migraines, misspelling it, pain management meds. So this is annotation by one of the employees of your client on top of the resume of these two things. And a perfectly benign reason for it. Accommodation. They're not entirely possible, of course. But they have no evidence that Mr. Smelko himself discriminated on the basis of migraines or anything else. In fact, one of the key supervisors at Covias had migraines. Mr. Smelko had Dupuytren's problem that we talked about with Mr. Sharnetsky. So he was sympathetic. 50 years of experience, your honor. 50 years of experience Mr. Smelko had before he retired. Never any history of discrimination. And you have the statement made by Miss Ostrander at Aerotech. Oh, Miss Diaz and Mr. Smelko are lovely people. They wouldn't discriminate. And in fact, Miss Ostrander says testimony ER 519-526, no discrimination. So then you get to look at Miss Ebert herself. What do we have here? Well, we have all sorts of strangeness with respect to her resume. Difficulties there. Red flags go up. You have Miss Smelko rate her 3.75 out of 10. That's a no higher. Miss Diaz rates her 5. That's mediocre at best. Her Excel skills were mediocre. You have all sorts of legitimate, perfectly appropriate reasons for not hiring Kelly Ebert that had nothing to do with discrimination on the basis of handicap. And forgive me if I get the names wrong. You're more familiar with the record. Was Dutton or Richardson, that's the speaker of the statement. This is why they didn't hire you. Yeah, she was the statement. She was the one that made that statement. Okay. Yeah, she was the one that- He asked who told her that. She said it was, she couldn't identify who it was. And there were three candidates- Did she say that someone from Covias told her that? Well, she said there were three- Wait a minute. Yeah, I'm sorry. Yes or no, and then explain. She said yes. Did she say someone from Covias told her that? Yeah, she said yes. Go ahead. And then there were three individuals. She couldn't identify who they were. So we have no idea who the identity of that individual was. Ms. Ostrander- She named two of them. Well, we have Ms. Diaz, who denies anything. And then the statements made by Diaz to Ostrander or Garrity or to the Phantom. And then any one of those three communicated it to her. And this communication was made to Richardson at about the same time that Ostrander and Garrity were trading positions, correct? That I think is correct. Yeah, yeah. So actually, in fact, Ms. Richardson did not receive anything directly from Covias. It was always something that had been, there had been an intermediary. Allegedly, Diaz made the statement to Garrity or to Ostrander or to the third party. Is a direct connection required under Rule 803? I don't know that it is, Your Honor, but it seems- The district court seemed to have required it, right? So you're saying that the district court got it wrong as a matter of law? There has to be personal knowledge as to what went on. So what's the personal knowledge on Ms. Richardson's part here? She had no personal knowledge. She wasn't there at the interview. She didn't know anything. So she didn't have the requisite personal knowledge. I presume- She heard it from someone who heard it from Diaz, right? In theory. And Diaz disclaims any such information. And then you have all these other three individuals who have no sufficient connection to it either. The bottom line in all of this is Exhibit 37 lacks anything resembling trustworthiness. And when you get that out of the picture, given the nature of the skills that Ms. Ebert had, given what was going on at Covias, and given the fact that it had not discriminated historically against anyone with respect to pain medications, that, in fact, Ms. Ebert would have passed the test, and that's a matter that was an admitted fact that everybody agreed to, there was no discrimination here. And the district court did not err in dismissing the case under 50A. Thank you. Thank you, counsel. Thank you. May I proceed? Thank you, Your Honor. I'd like to clear up just a few factual issues. First, counsel refers to this third individual. There is no such individual. Richardson repeatedly testified that there were two possible Aerotech account managers, Garrity or Ostrander, who would have provided that information and appears to have been misled by defense counsel's questioning. And that appears at 3 ER 470. The relevant exchange, they say, question, who told you that? That would have been either Brittany Ostrander or Madeline Garrity, the account manager or account recruiting manager. And then defense counsel asked, so one of three people told you something that sounds like that answer, correct? In the preceding answer, she had identified only two individuals. The question itself, I think, is what may have misled her. Secondly, the district court was well aware that the witnesses at trial were not, or Ostrander or Diaz were not going to corroborate Richardson's account. And that makes that clear in the ruling on the motions at 1 ER 35. He says, this is ruling on the residual exception says, the email is more probative of defendants alleged discrimination than any other evidence plaintiffs have proffered, especially since plaintiff asserts that due to the passive time, Ostrander no longer recalls her conversation with Diaz. And that's, in fact, exactly what the EEOC told the court at 2 ER 199. Quote, Diaz and Ostrander both testified in deposition that they have no recollection of the conversation where Diaz informed Ostrander of Covias's decision and Smelko has no memory of any of the events at issue. So again, the court was well aware that the other witnesses were not going to corroborate that account. On the legal front, there is no personal knowledge requirement in Rule 8036. The rule does not say personal knowledge and makes clear that the author of a business record may rely on information supplied by others with knowledge. And the case law makes that clear as well. Counsel, how far down the chain or up the chain do we have here? Is it I mean, here we have two degrees of separation. We have Diaz and you included a helpful chart in your brief. We have Diaz, one of the account managers, and then Richardson. What if we had three or four or five? Does it matter to you or would you still say the information transmitted by someone with knowledge provision is satisfied? So the rule itself doesn't set an outer bound on how many layers and at least what the as long as each chain falls either under the business record exception or some other exception or exemption, the rule would be satisfied. And here there are only two such links. There's the link from Ostrander to Richardson, which clearly falls within the business record exception. And then the link from Diaz to Ostrander, which either falls under the business record exception because Ostrander herself regularly provided that information to Aerotech or under the party opponent exemption because she was speaking within the scope of her employment on a matter she was authorized to speak on. So given those two exceptions, the email would each link in the chain would satisfy either the business record exception or another exemption. The fact that Covias allegedly had a policy against discrimination is not dispositive. The question is whether Covias followed that policy. And here Diaz and Smelko both testified that they were not familiar with how the policy worked and didn't receive training on it on the drug testing policy. Your position is that a jury ought to decide that? That's exactly right, Your Honor. It's a fact issue as to whether or not they followed that policy here and whether they were even aware that terminating someone or not hiring someone because of their use of legitimate use of prescription pain management medication would be discrimination. When Diaz was asked that question, she said, no, she didn't know. And it was unclear whether Smelko was aware that firing or not hiring someone because of their legitimate use of prescription pain management medication would constitute disability discrimination. And unless Your Honors have any further questions, we would again ask that this court vacate and remand. Thank you, counsel. Thank you. The case is submitted.
judges: HAWKINS, FLETCHER, TUNG